**CORRIE YACKULIC LAW PLLC**
Corrie J. Yackulic, WSBA No. 16063
110 Prefontaine Place S, Suite 304
Seattle, WA 98104
Telephone: (206) 787-1915
Email: corrie@cjylaw.com

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE DIVISION

| | |
|---|---|
| JULIA GUZMAN, INDIVIDUALLY AND AS GUARDIAN AD LITEM TO J.L.G., A MINOR, | NO. |
| PLAINTIFFS, | COMPLAINT FOR: |
| V. | (1) PRODUCT LIABILITY FOR FAILURE TO WARN; (2) VIOLATION OF CONSUMER PROTECTION LAWS |
| WALGREENS CO., | **JURY DEMAND** |
| DEFENDANT. | |

**PLAINTIFFS' ORIGINAL COMPLAINT AND JURY DEMAND**

Plaintiff Julia Guzman, Individually and as Guardian Ad Litem for J.L.G, a minor, pursuant to Fed. R. Civ. P. 17(c)(1)(A), by and through their undersigned counsel, bring this Complaint for damages against Defendant Walgreens Co. (hereinafter, "Defendant") and in support, state the following:

1. This is an action brought on behalf of Plaintiffs, Julia Guzman (hereinafter,

**COMPLAINT FOR DAMAGES**
**PAGE 1 of 18**

CORRIE YACKULIC LAW FIRM, PLLC
110 PREFONTAINE PLACE SOUTH, SUITE 304
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 787-1915 • FACSIMILE: (206) 299-9725

"Plaintiff Mother"), the natural and general guardian and mother of J.G. (hereinafter, "Plaintiff Child"), a minor, arising out of the failure of Defendant to warn about the dangers of prenatal exposure to Paracetamol, also known as acetaminophen (hereinafter "APAP"). As a result, Plaintiffs have suffered permanent injuries and significant pain and suffering, emotional distress, lost wages and earning capacity, and diminished quality of life. Plaintiffs respectfully seek all damages to which they may be legally entitled.

2. Defendant entirely failed its duty to adequately warn of the hazards of prenatal exposure to APAP, which was a direct and proximate cause of Plaintiffs' injuries and associated damages.

## STATEMENT OF PARTIES

3. At all material times Plaintiffs have been citizens and residents of Snohomish County, Washington and the United States.

4. Walgreens Co. is incorporated in Deerfield, Illinois with its principal place of business in Deerfield, Illinois.

5. Walgreens Co. is involved in the research, development, testing, manufacture, labeling, production, marketing, promotion, and/or sale of APAP through its over-the-counter store brand, acetaminophen (hereinafter, the "APAP Products").

6. Walgreens Co. is individually, and jointly and severally liable to Plaintiffs for damages they suffered, arising from Defendant's design, manufacture, marketing, labeling, distribution, sale, and placement of the defective APAP Products into the market, effectuated directly and indirectly through its agents, servants, employees, and/or owners, all acting within the course and scope of its agencies, services, employments, and/or ownership.

COMPLAINT FOR DAMAGES
PAGE 2 of 18

CORRIE YACKULIC LAW FIRM, PLLC
110 PREFONTAINE PLACE SOUTH, SUITE 304
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 787-1915 • FACSIMILE: (206) 299-9725

7. Walgreens Co. is vicariously liable for the acts and/or omissions of its employees and/or agents, who were at all material times acting on behalf of Walgreens Co. and within the scope of its employment or agency.

## VENUE AND JURISDICTION

8. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a), based on complete diversity of citizenship between Plaintiffs and Defendant. *See supra* ¶¶ 3–4.

9. The amount in controversy exceeds $75,000.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district.

11. Defendant has and continues to conduct substantial business in the State of Washington and in this District, distributes the APAP Products in this District, receives substantial compensation and profits from sales of the APAP Products in this District, and has made material omissions and misrepresentations and breaches of warranties in this District and caused injuries in this District to Plaintiffs, among others, so as to subject Defendant to in personam jurisdiction in this District. It was foreseeable at all times that Defendant could be haled into court in the State of Washington for its conduct that caused injuries to citizens of Washington, like Plaintiffs in this action. An exercise of in personam jurisdiction by this Court over Defendant comports fully with due process and does not offend traditional notions of fair play and substantial justice.

12. Defendant is registered to transact business in Washington.

**COMPLAINT FOR DAMAGES**
**PAGE 3 of 18**

CORRIE YACKULIC LAW FIRM, PLLC
110 PREFONTAINE PLACE SOUTH, SUITE 304
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 787-1915 • FACSIMILE: (206) 299-9725

**FACTS COMMON TO ALL COUNTS**
**APAP IS MARKETED AS THE SAFE PAIN RELIEVER**
**FOR PREGNANT WOMEN, BUT APAP CAN CAUSE ASD/ADHD IN CHILDREN**

13. APAP is widely used by pregnant women to relieve pain during the term of their pregnancy.

14. APAP was initially discovered in the late 1800's.

15. APAP was introduced to the US market in 1955 as the first aspirin-free pain reliever. APAP was originally marketed and sold as a product to reduce fever in children, packaged like a red fire truck with the slogan, "for little hotheads."

16. APAP is sold in billions of units annually in North America alone.

17. APAP has long been marketed as the safest, and the *only* appropriate, over-the-counter pain relief drug on the market for pregnant women.

18. More than 65% of pregnant women in the United States use APAP during pregnancy.

19. Based upon information and belief, a majority of women who use APAP during pregnancy do so electively for the treatment of headaches, muscle pain, back pain, and infection.

20. These pregnant women electively choose to take APAP because Defendant has marketed APAP as a safe pain reliever for pregnant women.

21. However, increasing experimental and epidemiological research shows that prenatal exposure to APAP alters fetal development, which significantly increases the risks of neurodevelopmental disorders, including but not limited to, autism spectrum disorder ("ASD") and attention-deficit/hyperactivity disorder ("ADHD").

COMPLAINT FOR DAMAGES
PAGE 4 of 18

CORRIE YACKULIC LAW FIRM, PLLC
110 PREFONTAINE PLACE SOUTH, SUITE 304
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 787-1915 • FACSIMILE: (206) 299-9725

22. Undisturbed development of the human brain in utero is vital to the health and wellness of a child's development. The human brain is vulnerable and extremely sensitive in utero. During this sensitive time-period in utero, certain chemicals have been found to cause permanent brain injury at low exposure levels.

23. Once ingested by the mother, APAP is known to readily cross the placenta and blood-brain barrier.

24. ASD is a serious neurological and developmental disorder that affects how people interact with others, communicate, learn, and behave.

25. There are three functional levels of ASD, with Level 1 requiring support with activities of daily living, Level 2 requiring substantial support with activities of daily living, and Level 3 requiring very substantial support with activities of daily living.

26. Treatments for ASD include behavioral management therapy, cognitive behavior therapy, joint attention therapies, medications, occupational therapy, physical therapy, social skill training, and speech-language therapy. Treatment for ASD lasts a lifetime, as there is no cure.

27. ADHD is a chronic neurodevelopmental disorder resulting in attention difficulty, hyperactivity, and impulsiveness.

28. ADHD begins in childhood and persists through adulthood. ADHD contributes to low self-esteem, troubled relationships, and difficulty with school, work, and familial relationships.

29. Treatments for ADHD, include, but are not limited to, chronic medication usage and various therapies. Treatment for ADHD lasts a lifetime, as there is no cure.

**COMPLAINT FOR DAMAGES**
**PAGE 5 of 18**

CORRIE YACKULIC LAW FIRM, PLLC
110 PREFONTAINE PLACE SOUTH, SUITE 304
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 787-1915 • FACSIMILE: (206) 299-9725

30. In or around 2018, the Center for Disease Control and Prevention ("CDC") found that 1 in 44 (2.3%) 8-year-old children have been diagnosed with ASD.

31. This represents an increase from a prior CDC finding that 1 in 68 U.S. children born in 2002 have ASD, which already represented a more than a 100% increase compared with children born a decade prior.

32. As of 2019, 8.8% of children had been diagnosed with ADHD, or roughly 325,000 children per year.

33. Parental awareness and changes in diagnoses do not fully account for the rapid rise in these diagnoses.

34. Rather, neurotoxic exposures, such as prenatal APAP exposure, partly explain a trending increase in diagnoses.

35. For decades, beginning in 1987, the scientific community has published studies showing that prenatal ingestion of APAP can cause ASD and ADHD.

36. A 2019 meta-analysis of studies from 1987 to 2016, with relative risks ranging from 1.16 to 1.34, found statistically significant nineteen percent (19%) increased risk of ASD in children whose mothers took APAP during pregnancy.

37. Since 2013, there have been six European birth cohort studies, examining over 70,000 mother-child pairs, showing the association between prenatal use of APAP and ASD and ADHD, confirming the results of studies dating back to 1987.

38. The overall body of scientific evidence has shown for decades that prenatal use of APAP can cause ASD and ADHD in the child.

**COMPLAINT FOR DAMAGES**
**PAGE 6 of 18**

CORRIE YACKULIC LAW FIRM, PLLC
110 PREFONTAINE PLACE SOUTH, SUITE 304
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 787-1915 • FACSIMILE: (206) 299-9725

39. During all relevant times herein, Defendant was engaged in the business of manufacturing and selling the APAP Products in the United States, and the weight of the scientific evidence available showed prenatal exposure to APAP significantly increases the risk of neurodevelopmental disorders in children exposed to APAP prenatally, including but not limited to ASD and ADHD.

40. At the time Plaintiff Mother was pregnant with Plaintiff Child the scientific evidence regarding the risks of in utero exposure of APAP was available to Defendant, and Defendant knew or should have known that prenatal use of APAP can cause ASD or ADHD.

41. Moreover, despite scientific evidence that prenatal use of APAP can cause ASD or ADHD, Defendant continued, and continues, to market APAP Products as safe pain relievers for pregnant women, making mothers believe they are choosing a safe drug for even minor aches, pains, and headaches.

### **PLAINTIFF MOTHER TOOK APAP PRODUCTS WHILE PREGNANT, AND IT CAUSED ASD IN PLAINTIFF CHILD**

42. Plaintiff Mother began using the APAP Products in or around July 2017 when she was pregnant with her Plaintiff Child.

43. Over the course of her pregnancy, Plaintiff Mother took the APAP Products for pain relief.

44. Plaintiff Mother believed it was safe for her to take the APAP Products during her pregnancy.

45. Indeed, Plaintiff Mother was instructed to not take ibuprofen or aspirin while pregnant but was informed she could take APAP freely and without risk.

**COMPLAINT FOR DAMAGES**
**PAGE 7 of 18**

CORRIE YACKULIC LAW FIRM, PLLC
110 PREFONTAINE PLACE SOUTH, SUITE 304
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 787-1915 • FACSIMILE: (206) 299-9725

46. There is no warning on the APAP Products' labels specifically addressing the risks of ASD if a mother ingests APAP while pregnant.

47. Had Plaintiff Mother known of the risk of taking APAP while pregnant, specifically that it could cause ASD in her child, she would not have taken the APAP Products.

48. Plaintiff Child was born on May 25, 2018.

49. Plaintiff Mother started to have concerns about Plaintiff Child's development when he was a couple of months old.

50. Specifically, at that time, the child was two months old, Plaintiff Child experienced developmental delays.

51. Plaintiff Child was ultimately diagnosed with ASD on May 13, 2022.

52. Plaintiff Child's ASD puts an incredible strain on Plaintiff Mother and their family.

53. Plaintiff Child requires an immense amount of assistance, developmental delays, has a very limited vocabulary, and exhibits many behavioral issues.

54. Indeed, although Plaintiff Child is four years old, he is still not potty trained.

55. Plaintiff Child has social anxiety and does not like to go outside.

56. Plaintiff's Mother fears for Plaintiff Child and experiences substantial stress and anxiety due to the challenges associated with Plaintiff Child's ASD.

## ESTOPPEL AND TOLLING OF STATUTE OF LIMITATIONS

57. Due to Defendant's acts of fraudulent concealment, Defendant is estopped from relying on any statutes of limitations or repose. Such acts include Defendant's intentional concealment from Plaintiff Mother and the general public that APAP is defective when there is

**COMPLAINT FOR DAMAGES**
**PAGE 8 of 18**

CORRIE YACKULIC LAW FIRM, PLLC
110 PREFONTAINE PLACE SOUTH, SUITE 304
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 787-1915 • FACSIMILE: (206) 299-9725

prenatal exposure, while continuing to market the APAP Products with the adverse effects described in this Complaint.

58. Given Defendant's affirmative actions of concealment by failing to disclose information about the defects known to it but not the public—information over which Defendant had exclusive control—and because Plaintiff Mother could not reasonably have known that the APAP Products were defective, Defendant is estopped from relying on any statutes of limitations that might overwise be applicable to the claims asserted in this Complaint.

59. Plaintiffs have, in any event, brought this action less than three years from the time that they discovered, or in the exercise of due diligence should have discovered, the harm and its cause.

## CLAIMS FOR RELIEF
### COUNT I: STRICT LIABILITY:  WPLA

60. Plaintiffs restate, reallege, and incorporate by reference the allegations set forth in the rest of this Complaint as if fully set forth herein.

61. At the time of Plaintiffs' injuries, the APAP Products were defective and unreasonably dangerous to foreseeable consumers using the APAP Products in a foreseeable manner during pregnancy, including Plaintiff Mother, because they lacked a suitable and adequate warning.

62. At all relevant times, Defendant engaged in the business of testing, developing, designing, manufacturing, marketing, labeling, selling, distributing, and promoting the APAP Products, which were defective and unreasonably dangerous to consumers, including Plaintiff

**COMPLAINT FOR DAMAGES**
**PAGE 9 of 18**

CORRIE YACKULIC LAW FIRM, PLLC
110 PREFONTAINE PLACE SOUTH, SUITE 304
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 787-1915 • FACSIMILE: (206) 299-9725

Mother, because they did not contain adequate warnings or instructions concerning the dangerous characteristics of ingesting APAP during pregnancy. These actions were under the ultimate control and supervision of Defendant. At all relevant times, Defendant registered, researched, manufactured, distributed, marketed, labeled, promoted, and sold the APAP Products within this District and aimed the marketing at the ultimate consumer. Defendant was at all relevant times involved in the retail and promotion of the APAP Products marketed and sold in this District.

63. Defendant had a duty to warn of the risks associated with the use of the APAP products during pregnancy.

64. The APAP Products ingested by Plaintiff Mother during pregnancy were in the same or substantially similar condition as they were when they left possession of the Defendant.

65. Defendant expected and intended the APAP Products to reach users such as Plaintiff Mother in the condition in which the APAP Products were sold.

66. Plaintiff Mother did not materially alter the APAP Products prior to ingestion.

67. Plaintiff Mother ingested the APAP Products during pregnancy as indicated on the APAP Products' labels.

68. Plaintiff Mother was unaware of the defects and dangers of the APAP Products during pregnancy and was specifically unaware that prenatal exposure increases the risk of brain and behavioral development of children in utero.

69. The labels on the APAP Products to consumers lack any warning specific to pregnant women. The information that Defendant did provide or communicate to consumers failed to contain relevant warnings, hazards, and precautions that would have enabled

**COMPLAINT FOR DAMAGES**
**PAGE 10 of 18**

CORRIE YACKULIC LAW FIRM, PLLC
110 PREFONTAINE PLACE SOUTH, SUITE 304
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 787-1915 • FACSIMILE: (206) 299-9725

consumers such as Plaintiff Mother to utilize the products safely and with adequate protection during pregnancy, or to decide to not use or ingest the APAP Products at all.

70. This alleged failure to warn is not limited to the information contained on the APAP Products' labeling. Defendant was able, in accord with federal law, to comply with relevant state law by disclosing the known risks associated with exposure to or use of APAP during pregnancy through other non-labeling mediums, including, but not limited to, promotion, advertisements, public service announcements, and/or public information sources. But Defendant did not disclose these known risks through any medium.

71. At all relevant times, Defendant had a duty to properly test, develop, design, manufacture, inspect, package, label, market, promote, sell, distribute, maintain, and supply the APAP Products; provide proper warnings for the APAP Products; and take such steps as necessary to ensure the APAP Products did not cause users and consumers, and their children, to suffer from unreasonable and dangerous risks. Defendant had a continuing duty to warn Plaintiff Mother of dangers associated with exposure to or use of APAP during pregnancy. Defendant, as a manufacturer, seller, and/or distributor of pharmaceutical medication, is held to the knowledge of an expert in the field.

72. At the time of manufacture, Defendant could have provided the warnings or instructions regarding the full and complete risks of the APAP Products during pregnancy because Defendant knew or should have known of the unreasonable risks of ASD and ADHD associated with prenatal exposure to and/or the use of such products.

73. At all relevant times, Defendant failed and deliberately refused to investigate, study, test, or promote the safety of the APAP Products, or to minimize the dangers to

**COMPLAINT FOR DAMAGES**  
**PAGE 11 of 18**

CORRIE YACKULIC LAW FIRM, PLLC  
110 PREFONTAINE PLACE SOUTH, SUITE 304  
SEATTLE, WASHINGTON 98104  
TELEPHONE: (206) 787-1915 • FACSIMILE: (206) 299-9725

consumers of the APAP Products and to those who would foreseeably use or be harmed by the APAP Products, including Plaintiffs.

74. Defendant failed to adequately warn consumers, like Plaintiff Mother, about the significant increased risk of neurodevelopmental disorders in children exposed to APAP prenatally, including but not limited to ASD and ADHD.

75. Defendant failed to adequately inform reasonably foreseeable consumers, like Plaintiff Mother, of the proper usage of the APAP Products.

76. Even though Defendant knew or should have known that APAP posed a grave risk of harm to Plaintiff Child, Defendant failed to exercise reasonable care to warn of the dangerous risks associated with use and prenatal exposure.

77. Plaintiff Mother was exposed to the APAP Products during pregnancy without knowledge of their dangerous characteristics.

78. At all relevant times, Plaintiff Mother used and/or was exposed to the use of the APAP Products while using them for their intended or reasonably foreseeable purposes during pregnancy, without knowledge of their dangerous characteristics.

79. Plaintiff Mother could not have reasonably discovered the defects and risks associated with the APAP Products prior to or at the time of Plaintiff consuming APAP during pregnancy. Plaintiff Mother relied upon the skill, superior knowledge, and judgment of Defendant to know about and disclose serious health risks associated with using the APAP Products.

80. If Plaintiff Mother had been properly warned of the defects, dangers, and risks associated with prenatal exposure to APAP, Plaintiff Mother would have utilized the APAP

**COMPLAINT FOR DAMAGES**
**PAGE 12 of 18**

CORRIE YACKULIC LAW FIRM, PLLC
110 PREFONTAINE PLACE SOUTH, SUITE 304
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 787-1915 • FACSIMILE: (206) 299-9725

Products safely and with adequate protection during pregnancy, or would have decided to not ingest the APAP Products at all. Defendant's failure to properly warn of those defects, dangers, and risks associated with prenatal exposure to APAP directly and proximately caused Plaintiffs' injuries and damages.

81. Pursuant to the Washington Products Liability Act ("WPLA"), RCW 7.72, et seq., at the time Defendant's APAP products left control of Defendant, they were defective and not reasonably safe. These defects include, but are not limited to, the following:

a) The APAP products that were manufactured and/or supplied by Defendant were not reasonably safe because adequate warnings or manufacturer instructions were not provided after the APAP products were manufactured and when Defendant learned of, or should have learned of, the dangers connected with the APAP products.

b) The APAP products manufactured and/or supplied by Defendant were not reasonably safe because they did not conform to an express warranty made by Defendant regarding the product's safety and fitness for use. Defendant expressly warranted that the APAP products were safe and fit for their intended purposes, that it was of merchantable quality, that it would not produce any dangerous side effects, that they were adequately tested, and that the APAP products were safe to human health and the environment, and effective, fit, and proper for its intended use. Defendant did not disclose the material risks that its APAP products could cause severe and permanent injury. Defendant's express warranty induced Plaintiff to use the APAP

COMPLAINT FOR DAMAGES
PAGE 13 of 18

CORRIE YACKULIC LAW FIRM, PLLC
110 PREFONTAINE PLACE SOUTH, SUITE 304
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 787-1915 • FACSIMILE: (206) 299-9725

products, and Plaintiff's damages were proximately caused because Defendant's express warranty was untrue. The APAP products were not reasonably safe because of nonconformity to express warranty under the WPLA.

82. Pursuant to the WPLA Defendant is liable to Plaintiffs for injuries caused by Defendant's negligent or willful failure, as described above, to provide adequate warnings or other relevant information and data regarding the appropriate use of the APAP Products and the risks associated with the use of APAP, and because of the products' nonconformity to Defendant's express warranty.

83. As a direct and proximate result of Defendant placing defective APAP Products into the stream of commerce, and Plaintiff Mother's foreseeable use and ingestion of the APAP Products during pregnancy, Plaintiff Child was exposed to APAP prenatally, causing him to develop ASD and ADHD.

84. As a direct and proximate result of Defendant placing defective APAP Products into the stream of commerce, Plaintiffs have suffered permanent injuries, significant pain and suffering, emotional distress, lost wages and earning capacity, and diminished quality of life. Plaintiffs respectfully seek all damages to which they may be legally entitled.

## COUNT II: VIOLATION OF CONSUMER PROTECTION LAWS

85. Plaintiffs restate, reallege, and incorporate by reference each of the allegations set forth in the rest of this Complaint as if fully set forth herein.

86. Plaintiff Mother purchased and used the APAP Products for primarily personal use and pain relief during pregnancy, thereby suffering ascertainable losses as a result of

**COMPLAINT FOR DAMAGES**
**PAGE 14 of 18**

CORRIE YACKULIC LAW FIRM, PLLC
110 PREFONTAINE PLACE SOUTH, SUITE 304
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 787-1915 • FACSIMILE: (206) 299-9725

Defendant's actions in violation of the consumer protection laws.

87. Had Defendant not engaged in the deceptive conduct described in this Complaint, Plaintiff would not have purchased and/or paid for the APAP Products, and Plaintiffs would not have incurred related injury medical costs.

88. Defendant engaged in wrongful conduct and unlawful while at the same time obtaining under false pretenses moneys from Plaintiff for the APAP Products. Those moneys would not have been paid had Defendant not engaged in unfair and deceptive conduct. Plaintiffs actually relied upon Defendant's misrepresentations and deception concerning the APAP Products.

89. Defendant engaged in the following unfair methods of competition or deceptive acts or practices, which are proscribed by law:

   a) knowingly making false representations as to the characteristics, ingredients, uses, benefits, or qualities of goods for sale;

   b) advertising goods or services with the intent not to sell them as advertised;

   c) engaging in fraudulent or deceptive conduct creating a likelihood of confusion or misunderstanding.

90. Plaintiffs were injured by the cumulative nature of Defendant's conduct. The cumulative effect, directed at patients, physicians, and consumers, was to create demand within the general public for APAP Products and to sell those products. Each aspect of Defendant's conduct combined to artificially create sales of the APAP Products, including to Plaintiff Mother who did, in fact, purchase the APAP Products. In this way, Defendant's unfair or deceptive acts and practices occurred in trade or commerce and had a public interest impact

**COMPLAINT FOR DAMAGES**
**PAGE 15 of 18**

CORRIE YACKULIC LAW FIRM, PLLC
110 PREFONTAINE PLACE SOUTH, SUITE 304
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 787-1915 • FACSIMILE: (206) 299-9725

upon other members of the public who have been or will be injured in exactly the same fashion.

91. Defendant had a statutory duty to refrain from unfair or deceptive acts or trade practices in the design, labeling, development, manufacture, promotion, and sale of the APAP Products.

92. Defendant's deceptive, unconscionable, or fraudulent representations and material omissions to consumers, including Plaintiff Mother, constitute unfair and deceptive acts and trade practices in violation of the federal and state consumer protection statutes listed below.

93. Defendant's actions, as complained of in this Complaint, constitute unfair competition or unfair, unconscionable, deceptive, or fraudulent acts or trade practices in violation of the federal and state consumer protection statutes listed below.

94. Defendant has engaged in unfair competition, or unfair or deceptive acts or trade practices, or has made false representations under the following statutes:

- 15 U.S.C. §§ 2301–12 (1982);
- RCW 19.86 et seq.;

95. To protect consumers against unfair, deceptive, fraudulent, and unconscionable trade and business practices, and false advertising, Defendant, as the supplier, manufacturer, advertiser, and seller, is subject to liability under the above legislation enacted against unfair, deceptive, fraudulent, and unconscionable consumer sales practices.

96. By knowingly and falsely representing that the APAP Products were fit to be used for the purposes for which they were intended—when in fact they were defective and dangerous when used during pregnancy—and by other acts alleged, Defendant violated the above statutes,

**COMPLAINT FOR DAMAGES**
**PAGE 16 of 18**

CORRIE YACKULIC LAW FIRM, PLLC
110 PREFONTAINE PLACE SOUTH, SUITE 304
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 787-1915 • FACSIMILE: (206) 299-9725

enacted to protect consumers against unfair, deceptive, fraudulent, and unconscionable trade and business practices, and false advertising.

97. Defendant's actions and omissions are uncured or incurable, deceptive acts under the above legislation.

98. Defendant had actual knowledge of the defective and dangerous conditions of the APAP products but failed to take any action to cure such defective and dangerous conditions.

99. Plaintiff Mother relied upon Defendant's misrepresentations and omissions in determining which APAP Products (if any) to ingest.

100. Defendant's deceptive, unconscionable, or fraudulent representations and material omissions to consumers constituted unfair and deceptive acts and practices.

101. By reason of the unlawful acts in which Defendant engaged, and as a direct and proximate result thereof, Plaintiffs have suffered ascertainable losses and damages.

102. As a direct and proximate result of Defendant's violations of the above-listed legislation, Plaintiffs have sustained economic losses and other damages and are entitled to statutory and compensatory damages in an amount to be proven at trial. Plaintiffs request an award of treble the actual damages sustained by them, as allowed by RCW 19.86.090.

## PRAYER FOR RELIEF

Plaintiffs demand judgment against Defendant, individually, and jointly and severally, and prays for the following relief in accordance with applicable law and equity:

i. Compensatory damages to Plaintiffs for past, present, and future damages, including pain and suffering for severe and permanent personal injuries sustained by Plaintiffs, permanent impairment, mental pain and suffering,

COMPLAINT FOR DAMAGES
PAGE 17 of 18

CORRIE YACKULIC LAW FIRM, PLLC
110 PREFONTAINE PLACE SOUTH, SUITE 304
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 787-1915 • FACSIMILE: (206) 299-9725

loss of enjoyment of life, health and medical care costs, economic damages, together with interest and costs as provided by law; and

ii. Restitution and disgorgement of Defendant's profits; and

iii. Treble damages as permitted by statute or other civil penalties; and

iv. Reasonable attorneys' fees as provided by law; and

v. Past and future costs of all proceedings; and

vi. All ascertainable economic damages; and

vii. Prejudgment interest on all damages as allowed by law; and

viii. Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: June 9, 2022.

**CORRIE YACKULIC LAW PLLC**

*/s/ Corrie J. Yackulic*
Corrie J. Yackulic, WSBA No. 16063
110 Prefontaine Place S, Suite 304
Seattle, WA 98104
Telephone: (206) 787-1915
Email: corrie@cjylaw.com

**WATTS GUERRA LLC**
Mikal C. Watts (*Pro Hac Vice* Forthcoming)
Texas State Bar No. 20981820
mcwatts@wattsguerra.com
Alicia D. O'Neill (*Pro Hac Vice* Forthcoming)
Texas State Bar No. 24040801
aoneill@wattsguerra.com
5726 W. Hausman Dr., Suite 119
San Antonio, Texas 78249
Direct:(210) 447-0500

*ATTORNEYS FOR PLAINTIFFS*

COMPLAINT FOR DAMAGES
PAGE 18 of 18

CORRIE YACKULIC LAW FIRM, PLLC
110 PREFONTAINE PLACE SOUTH, SUITE 304
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 787-1915 • FACSIMILE: (206) 299-9725